UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

SHEILA MAY MACKEY,

                    Plaintiff,

         -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                    Defendant.

No.    1:14-CV-3075-WFN

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT

Before the Court are cross-Motions for Summary Judgment (ECF Nos. 15 and 17). Attorney James Tree represents Plaintiff; Special Assistant United States Attorney Jordan Goddard represents Defendant.  The Court has reviewed the administrative record and briefs filed by the parties and is fully informed.

## JURISDICTION

Plaintiff protectively applied for disability insurance [SSD] and supplemental security income [SSI] benefits on December 20, 2010, alleging disability beginning on March 5, 2005, due to physical and mental impairments.[1]  The application was denied initially and on reconsideration.

A hearing was held before Administrative Law Judge [ALJ] Stephanie Martz on August 2, 2012.  At the hearing, Plaintiff, represented by counsel, testified as did Roni Lenore, MA, a vocational expert [VE].  The ALJ concluded that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review making the ALJ's decision the

---

[1]At the hearing, Plaintiff's counsel amended the disability onset date to June 1, 2008. (Tr. at 46.)

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 1

final decision of the Commissioner.  Pursuant to 42 U.S.C. § 405(g), this final decision is appealable to the district court.  Plaintiff sought judicial review on May 30, 2014.

## FACTS

The facts of the case are set forth in detail in the transcript of the proceedings and are briefly summarized here.

Plaintiff was 39 years old at the time of the hearing.  (Tr. at 48.)  Plaintiff did not graduate from high school, but earned a General Equivalence Degree [GED].  (*Id.*)  Plaintiff previously worked as a fruit picker, a caregiver, and at a Subway restaurant.  (Tr. at 49.)

Plaintiff reports having pain throughout her body, fibromyalgia, stomach aches, lack of appetite, nausea, skin problems, degenerative disc disease, arthritis, depression, anxiety, and other ailments.  (Tr. at 50-58.)  Plaintiff takes Lyrica for her pain symptoms and Clonazepam for anxiety.  (Tr. at 51, 54.)  Medication alleviates some symptoms, but not all, and has adverse side effects.  (Tr. at 51, 54.)  Plaintiff attends counseling.  (Tr. at 55.)

Plaintiff has good days and bad days.  (Tr. at 52.)  On good days, Plaintiff can clean her house, do laundry, go shopping, and help her mother with groceries.  (Tr. at 52-53, 60-61.)  On bad days, Plaintiff can do nothing except lie down.  (Tr. at 57.)  Plaintiff states that she cannot walk more than 100 feet within pain.  (Tr. at 54.)  Plaintiff states that she can only sit or stand for 10-15 minutes before her body begins to hurts.  (Tr. at 55.)

## SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).  This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 2

burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Comm'r, Soc. Sec. Admin.,* 359 F.3d 1190, 1193-94 (9th 2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).

## ADMINISTRATIVE DECISION

Initially, for purposes of SSD, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through March 13, 2013.

At step one, the ALJ determined that Plaintiff did not engage is substantial gainful activity since June 1, 2008, the amended onset date.

At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disc disease, major depressive disorder, anxiety, pain disorder, borderline personality disorder, and alcohol and cannabis abuse.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments described at 20 C.F.R. Part 404, Subpart P, Appendix 1(20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

At step four, the ALJ found that Plaintiff had the residual functional capacity [RFC] to perform light work, subject to some physical and social restrictions. The ALJ determined that Plaintiff could perform past relevant work as a fruit sorter or production assembler.

The ALJ did not reach step five as she determined that Plaintiff was not disabled at step four.

## STANDARD OF REVIEW

In *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000).

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 3

The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. [*Tackett*, 180 F.3d at 1097]. Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett,* 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the ALJ did not apply the proper legal standards in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ISSUES

1.  Did the ALJ err in evaluating the medical evidence of Plaintiff's mental and physical impairments?

2.  Did the ALJ err at step two by not finding Plaintiff's pain disorder to be a severe impairment?

3.  Did the ALJ err in finding Plaintiff not credible and rejecting Plaintiff's subjective complaints?

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 4

4.   Did the ALJ err in relying upon Dr. Toews' diagnosis of malingering in discrediting Plaintiff's symptom testimony?

5.   Did the ALJ err in formulating Plaintiff's RFC and hypothetical questions to the VE by failing to account for Plaintiff's full range of functional limitations?

## DISCUSSION

**1.   Did the ALJ err in evaluating the medical evidence of Plaintiff's mental and physical impairments?**

In weighing medical source opinions, the ALJ should distinguish between three different types of doctors: (1) treating doctors, who actually treat the claimant; (2) examining doctors, who examine but do not treat the claimant; and (3) nonexamining doctors who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating doctor than to the opinion of an examining doctor. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The ALJ should give more weight to the opinion of an examining doctor than to the opinion of a nonexamining doctor. *Id.*

When a doctor's opinion is not contradicted by another doctor, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a doctor's opinion is contradicted by another doctor, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the first doctor. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

In this case, there is conflicting medical evidence regarding whether Plaintiff is disabled. *Compare* Tr. at 303 (Dr. Toews opining that Plaintiff mental impairments not disabling) *with* Tr. at 429-31 (Dr. Billings opining that Plaintiff's borderline personality disorder would markedly affect her ability to interact appropriately with coworkers and supervisors). Therefore, the ALJ was only required to provide "specific and legitimate reasons" for rejecting the opinions finding Plaintiff disabled.

///

///

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 5

### a.  Acceptable medical sources

Only acceptable medical sources, including licensed physicians and psychologists, can provide evidence to establish impairments.  20 C.F.R. §§ 404.1513(a), 416.913(a).

### i.    Jay Toews, Ed.D.

Dr. Toews performed a psychological evaluation of Plaintiff on February 23, 2011. Dr. Toews diagnosed Plaintiff with malingering, depression, and anxiety disorder.  (Tr. at 304.)  Dr. Toews summarized his findings as follows:

> [Plaintiff] presents with complaints of depression and anxiety, and chronic abdominal pain.  She has a history of emotional trauma.  She appears to function in the low average range of intelligence.  Memory assessment indicate[s] she is functioning in the Average range with excellent verbal recall ability.  There is no indication of neural cognitive compromise.

(Tr. at 303.)  Dr. Toews assessed Plaintiff's Global Assessment of Functioning [GAF] score as 60 to 65.[2]  (Tr. at 304.)  Dr. Toews also opined that Plaintiff's reporting was "strongly indicative of symptom exaggeration and/or [malingering] . . . [and] secondary gain motivation."  (Tr. at 303.)

The ALJ gave significant weight to Dr. Toews' opinions, reasoning that it was consistent with the objective medical evidence.  (Tr. at 32-33.)  The ALJ rejected Plaintiff's argument that Dr. Toews was biased.  (Tr. at 33.)

The Court finds that the ALJ erred in giving significant weight to Dr. Toews' opinions.  Contrary to the ALJ's reasoning, Dr. Toews' opinions are *not* consistent with the medical records concerning Plaintiff's mental impairments, in particular the opinions of Dr. Billings and Ms. Spitler discussed *infra.*  As argued by Plaintiff, Dr. Billings' and Ms. Spitler's opinions suggest that Plaintiff's mental impairments may preclude her from full

---

[2]"The GAF reflects the 'clinician's judgment of the individual's overall level of functioning and includes psychological, social and occupational functioning.'" *Orellana v. Astrue*, 2008 WL 398834, at *9 (E.D. Cal. Feb. 12, 2008) (quoting DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 30 (4th ed. 1994)).

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 6

time employment.  Because the ALJ's sole reason in giving great weight to Dr. Toews' opinions was that his opinions were consistent with the medical evidence, when the evidence was not in fact consistent, the ALJ erred in giving great weight to Dr. Toews' opinions.

### ii.    Dr. Phillip Dove

Dr. Dove appears to be Plaintiff's primary care physician at Yakima Neighborhood Health Services.  (Tr. at 406.)    The record reveals that Dr. Dove first saw Plaintiff on February 13, 2012 regarding Plaintiff's complaint of fibromyalgia.    (Tr. at 417.) Dr. Dove noted that Plaintiff's pain had improved with an "increased dose of gabapentin" and counseled her to "stay active." (Tr. at 420.)  Dr. Dove saw Plaintiff again on June 18, 2012 regarding her alleged back pain.  (Tr. at 410.)    Dr. Dove described Plaintiff as "irritable, frustrated, and confrontational" and that she requested a referral to a pain clinic. (Tr. at 413.)  Dr. Dove's treatment notes indicate that he discussed with Plaintiff her complaints of fibromyalgia and digestive issues and further suggested she undergo a pap smear and cease smoking.  (Tr. at 413.)  Dr. Dove saw Plaintiff again on July 18, 2012.    Dr. Dove described Plaintiff as "confrontational" and "negative."    (Tr. at 408.) Dr. Dove recommended Plaintiff take Lyrica to help her alleged fibromyalgia, as well as daily exercise, daily showers, and ceasing smoking.  (Tr. at 408.)  Dr. Dove also diagnosed scoliosis (pending workup), depression, and tobacco abuse disorder.  (Tr. at 409.)

In response to a questionnaire prepared by Plaintiff's counsel dated February 15, 2012, Dr. Dove opined that Plaintiff would miss one day of work a month due to fibromyalgia pain and depression.  (Tr. at 378.)  Although his hand writing is difficult to decipher, Dr. Dove appears to indicate that, at the time of this letter, he had only seen Plaintiff twice.  (*See* Tr. at 378 ("[O]nly has see[n] 2x now.").)

The ALJ rejected Dr. Dove's opinion that Plaintiff would likely miss one day of work per month.  (Tr. at 33-34.)    The ALJ reasoned that Dr. Dove did not provide objective support or any other basis for his opinion.  (Tr. at 34.)

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 7

The Court finds that the ALJ did not err in rejecting Dr. Dove's opinion that Plaintiff would miss one day of work per month. Plaintiff apparently had three appointments with Dr. Dove. In none of the records from these appointments did Dr. Dove find Plaintiff so physically limited that she would miss work. In the questionnaire, Dr. Dove also seemed to qualify his opinion based on his limited history with Plaintiff. The ALJ may reject opinions that are "brief" or "conclusory." *Batson*, 359 F.3d at 1195. The ALJ did not err in rejecting Dr. Dove's opinion that Plaintiff would miss one day of work per month.

### iii.    Dr. Emma Joan H. Billings

Dr. Billings examined Plaintiff on September 24, 2012 and completed a psychological assessment. (Tr. at 424-31.) Dr. Billings diagnosed Plaintiff with several mental impairments, including (1) Major Depressive Disorder, single episode, moderate, (2) Pain Disorder, associated with both psychological factors, and a general medical condition, and (3) Borderline Personality Disorder. (Tr. at 428.) Dr. Billings assessed Plaintiff with a GAF score of 51, which indicated moderate impairment in social and occupational functioning. (Tr. at 428.) Dr. Billings also noted that Plaintiff's psychosocial stressors included financial difficulties, family conflict, and chronic illness. (Tr. at 428.) Dr. Billings opined that Plaintiff would likely have difficulties with coworkers that would "interfere with maintaining employment due to her defensive perceptions." (Tr. at 429.) Dr. Billings opined that Plaintiff was markedly limited in her abilities to respond to change, to supervisors, and co-workers. (Tr. at 431.)

The ALJ gave "partial weight" to Dr. Billings' opinions. (Tr. at 33.) The ALJ rejected Dr. Billings' opinion as to Plaintiff's marked limitations reasoning that Dr. Billings' relied on Plaintiff's non-credible self-reporting. (Tr. at 33.) The ALJ also noted that Plaintiff's counseling notes do not support "extreme difficulties getting along with others," but rather showed "significant improvements." (Tr. at 33.)

Plaintiff argues that Dr. Billings' opinions are consistent with other evidence contained in the record and are consistent with Plaintiff's borderline personality disorder diagnosis.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 8

The ALJ erred in assigning little weight to Dr. Billings' opinions concerning the severity of Plaintiff's mental impairments, in particular her social limitations. As discussed *infra*, the ALJ erred in evaluating Plaintiff's credibility as related to her mental impairments. Furthermore, the Court agrees with Plaintiff that the record does not demonstrate significant improvement. Although there are rare instances where Plaintiff indicated that she was doing better, there are more occasions where Plaintiff indicated that her condition was getting worse. Because the ALJ partially erred in evaluating Plaintiff's credibility, and because her finding that Plaintiff's conditions were improving is not supported by substantial evidence, the ALJ failed to provide specific and legitimate reasons for discounting Dr. Billings' opinions.

### iv.    Marie Ho, M.D.

Dr. Ho completed a physical evaluation of Plaintiff on February 27, 2011. (Tr. at 305-10.) Dr. Ho noted that Plaintiff had a history of degenerative disc disease and anxiety and depression that the Plaintiff believed she has fibromyalgia. (Tr. at 309.) Dr. Ho also noted "[t]here [are] no medical records supporting [Plaintiff's] complaints." (Tr. at 309.) Dr. Ho opined that Plaintiff could walk and stand for at least two hours, but less than six hours, "due to limitations of her lower back." (Tr. at 310.) Likewise, Dr. opined that Plaintiff could sit for at least two hours, but no more than six hours, on account of her back pain. (Tr. at 310.) Dr. Ho assessed certain other physical limitations and stated that Plaintiff's "[h]istory of anxiety/depression, panic attacks, and short-term memory loss may limit her ability to function in the workplace." (Tr. at 310.) Dr. Ho ordered radiological images of Plaintiff's back, which revealed "[m]ild degenerative changes in the lumbar spine." (Tr. at 311.)

The ALJ gave little weight to Dr. Ho's opinions regarding Plaintiff's walk/sit/stand limitations. The ALJ reasoned that Dr. Ho did not provide a basis for her opinions and they were not supported by objective findings. (Tr. at 33.)

The ALJ did not err in evaluating Dr. Ho's opinions. Despite giving little weight to Dr. Ho's walk/sit/stand opinions, in the ALJ's RFC determination, the ALJ capped

Plaintiff's ability to walk/sit/stand at six hours out of an eight hour work day with regular breaks.   (Tr. at 26.)   This determination seems consistent with Dr. Ho's assessed limitations.  Furthermore, at the hearing, the ALJ asked the VE if there were jobs available for an individual capable of walking/sitting/standing for only four hours at a time.  (Tr. at 66-67.)  The VE opined that such an individual could perform certain forms of sedentary work.  (Tr. at 67-68.)  Because the ALJ's RFC determination is consistent with Dr. Ho's assessments, it appears the ALJ gave more than "little weight" to Dr. Ho's opinions.  Even if the ALJ erred in determining that Plaintiff was capable of walking/sitting/standing six hours of an eight hour work day, any error is harmless because the ALJ also considered a four hour walk/sit/stand limitation, which is within the two to six hour range opined by Dr. Ho.  *See Molina*, 674 F.3d at 1115 (Error is harmless when it is "inconsequential to the ultimate nondisability determination").

### b.  Other medical sources

An ALJ must consider evidence from "other sources," "as to how an impairment affects a claimant's ability to work."  *Sprague*, 812 F.2d at 1232.  "Other" sources include nurse-practitioners, physicians' assistants, therapists, and family members.   20 C.F.R. §§ 404.1513(d), 416.913(d); S.S.R. 06-03p.   An ALJ must give "germane" reasons to discount evidence from "other sources."  *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993).  Germane reasons to discount an opinion include contradictory opinions and lack of support in the record.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  Simply stating that the lay witness testimony does not objectively establish a medically determinable impairment is not a germane reason for rejecting lay witness testimony that concerns a claimant's ability to work. *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (stating that the ALJ "should not have discredited [a lay witness's] testimony on the basis of its relevance or irrelevance to medical conclusions.").

### i.    Mr. Russell Anderson, LCSW

Mr. Anderson completed an initial assessment of Plaintiff on May 29, 2012 at Central Washington Comprehensive Mental Health.   Mr. Anderson noted Plaintiff's

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 10

complaints of depression, chronic pain, and fibromyalgia.  (Tr. at 385-88)  Mr. Anderson listed diagnoses of major depressive disorder, panic disorder with agoraphobia, pain disorder, and migraines, fibromyalgia, scoliosis, and dental problems.  (Tr. at 387.)  Mr. Anderson recommended continual outpatient treatment lasting an estimated 6 months, including six to ten cognitive behavioral therapy sessions.  (Tr. at 388.)

The ALJ did not discuss Mr. Anderson's initial assessment or his diagnoses. Plaintiff argues that the ALJ erred in rejecting the opinions of Mr. Anderson, particularly Mr. Anderson's diagnosis of pain disorder.

The Court concludes that the ALJ did not err in failing to discuss Mr. Anderson's diagnosis of pain disorder.  If Mr. Anderson had made findings concerning Plaintiff's ability to work, the ALJ would have been required to evaluate those findings.  *Bruce*, 557 F.3d at 1115.  But the diagnosis of an impairment alone does not establish disability.  *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).  Furthermore, as mentioned by the ALJ, only acceptable medical sources, including licensed physicians and psychologists, can provide evidence to establish an impairment.  20 C.F.R. §§ 404.1513(a), 416.913(a).  The ALJ did not err in failing to discuss Mr. Anderson's diagnosis of pain disorder.

### ii.    Ms. Debbi Spitler, PA-C

Ms. Spitler, a physician's assistant, completed a psychiatric evaluation of Plaintiff on June 14, 2012.  (Tr. at 379-84.)  Ms. Spitler noted that Plaintiff "avoids social situations" and reports being angry and irritable.  (Tr. at 379.)  Ms. Spitler diagnosed Plaintiff with bipolar disorder, posttraumatic stress disorder [PTSD], pain disorder related to psychological factors, and borderline personality disorder.  (Tr. at 382.)  Ms. Spitler assessed Plaintiff's GAF score as 40.  (Tr. at 382.)  Ms. Spitler recommended Plaintiff participate in therapy for her PTSD and prescribed Seroquel for mood stabilization, depression, anxiety, and insomnia.  (Tr. at 383.)  Ms. Spitler saw Plaintiff again on June 28, 2012 and July 10, 2012 for medication management appointments.  (Tr. at 391, 397.)  At the June 28, 2012 appointment, Plaintiff reported feeling better, but Plaintiff complained of being significantly worse at the July 10, 2012 appointment.  Ms. Spitler

made some adjustments to Plaintiff's medications at the July 10, 2012 appointment. (Tr. at 394.)

The ALJ gave little weight to Ms. Spitler's opinions as she was not an acceptable medical source. The ALJ also reasoned that Ms. Spitler's opinions were inconsistent with Plaintiff's reports of improvement and other medical evidence in the record. (Tr. at 34.)

As discussed *supra*, the Court agrees with Plaintiff that there is not substantial evidence in the record supporting the conclusion that Plaintiff's conditions are significantly improving. As demonstrated by Ms. Spitler's treatment notes, Plaintiff sometimes reports improvement, but at other times reports worsening symptoms. The Court also agrees with Plaintiff that Ms. Spitler's opinions appear largely consistent with the medical record, including the opinions of Dr. Billings. Therefore, these are not germane reasons for rejecting Ms. Spitler's opinions. Additionally, the ALJ also erred in discrediting Ms. Spitler's assessments of Plaintiff's limitations simply because Ms. Spitler is not an acceptable medical source. *See Bruce*, 557 F.3d at 1115 (stating that the ALJ "should not have discredited [a lay witness's] testimony on the basis of its relevance or irrelevance to medical conclusions.").

### c. Conclusion

Regarding Plaintiff's physical impairments, the ALJ applied the correct legal standards and her finding that Plaintiff's physical impairments are not disabling is supported by substantial evidence. Regarding Plaintiff's mental impairments, however, the ALJ erred by finding Dr. Toews' opinions consistent with the medical evidence. As evidenced by the opinions of Dr. Billings and Ms. Spitler, Dr. Toews' opinions are not consistent with the medical evidence. On remand, the ALJ shall reevaluate the evidence of Plaintiff's mental impairments taking into account these divergent opinions.

### 2. Did the ALJ err at step two by not finding Plaintiff's pain disorder to be a severe impairment?

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 12

Plaintiff argues that the ALJ erred in finding "Pain Disorder was not a step two impairment and in failing to discuss this Pain Disorder and how it affected [Plaintiff's] pain."  ECF No. 15 at 16.

The step-two analysis is "a de minimis screening device used to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).  An impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities."  20 C.F.R. §§ 404.1521(a), 416.921(a).  Basic work activities are "abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotation marks omitted).  A claimant's own statement of symptoms alone will not suffice.  *See* 20 C.F.R. §§ 404.1508, 416.908.

Contrary to Plaintiff's argument, the ALJ did in fact find Plaintiff to have a severe impairment of "pain disorder" at step two.  (Tr. at 22.)  The ALJ did not dedicate a specific section to analyze the severity of Plaintiff's pain disorder, but throughout the opinion the ALJ addressed the medical evidence and Plaintiff's testimony concerning her pain.  The ALJ's conclusion that Plaintiff's physical pain (as manifested through her complaints including fibromyalgia and back pain) is not disabling is supported by substantial evidence.  The ALJ did not err in evaluating Plaintiff's impairment of pain disorder.

### 3.  Did the ALJ err in finding Plaintiff not credible and rejecting Plaintiff's subjective complaints?

It is generally the province of the ALJ to make credibility determinations.  *Andrews*, 53 F.3d at 1039.  "To determine whether the claimant's testimony regarding the severity of [his] symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 13

follow a prescribed course of treatment; and, (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284.  Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the claimant's testimony about the severity of the symptoms.   *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012).

The ALJ cited Dr. Toews' opinion that Plaintiff was malingering, Tr. at 32-33, 304, but also provided other reasons for finding Plaintiff less than credible.

### a.  Inconsistent with activities of daily living

The ALJ found that Plaintiff's reported symptoms "contrast sharply" to her activities of daily living.  (Tr. at 28.)   The ALJ noted that, despite Plaintiff's complaints of worsening body pain, sleep disturbance, numbness, swelling, spasms, tingling in legs, weakness, limping, and decreased mobility, Plaintiff was still able to cook, clean, perform household chores, drive, paint rocks, exercise occasionally, and attend church group weekly.  (Tr. at 28.)

"[D]aily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (internal quotation marks omitted).  A claimant need not be "utterly incapacitated" to be eligible for benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) ("The sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity.").

In this case, there is conflicting evidence regarding the extent of Plaintiff's ability to perform activities of daily living.  There is substantial evidence in the record to support that Plaintiff is physically capable of carrying out certain types of tasks.  In such a situation, the Court must defer to the ALJ's determination and not substitute its own judgment. *Molina*, 674 F.3d at 1111.  The fact that Plaintiff is physically able to perform certain tasks, however, has little bearing on her reporting of mental impairments.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 14

Therefore, Plaintiff's credibility concerning her mental impairments should not be diminished because of her ability to carry out some activities of daily living.

### b. Inconsistent with medical evidence

The ALJ found Plaintiff's reporting of her physical limitations inconsistent with the medical evidence, including the limitations opined by several physicians and radiographic images of Plaintiff's back.  (Tr. at 29; *see also* Tr. at 311, 362.)  Likewise, the ALJ found Plaintiff's reporting of her mental capacity inconsistent with the medical evidence, including appointment notes and standardized mental tests and examinations.  (Tr. at 29-30.)

As discussed *supra*, the Court found that the ALJ did not err in concluding Plaintiff's physical impairments are not disabling.  Therefore, inconsistency with the medical evidence was a legitimate reason for rejecting Plaintiff's reporting of her physical impairments.  As discussed *supra*, however, the ALJ did not provide adequate reasons for rejecting the opinions of Ms. Spitler or Plaintiff's examining psychologist Dr. Billings concerning Plaintiff's mental impairments.  These opinions suggest that the severity of Plaintiff's mental impairments, particularly her social functioning, is generally consistent with her reporting.  Therefore, inconsistency with medical evidence is not an adequate reason for discrediting Plaintiff's reporting of her mental impairments.

### c. Conservative treatment and failure to comply with recommended treatment

The ALJ noted that Plaintiff's back pain is "generally well controlled on non-narcotic medications when she is compliant with treatment."  (Tr. at 29.)   The ALJ also found Plaintiff's mental symptoms stable when she was compliant with treatment and her prescribed medication.  (Tr. at 30.)  The ALJ observed that Plaintiff's medical records are not at "the level of mental health treatment one would expect for someone alleging disability."  (Tr. at 30.)  The ALJ dismissed Plaintiff's claims that she could not afford treatment, reasoning that Plaintiff underrepresented her financial situation because she had at least enough money to purchase marijuana and alcohol.  (Tr. at 30.)

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 15

The ALJ noted that Plaintiff was not "entirely compliant in her treatment plan." (Tr. at 31.)

Again, the ALJ gave appropriate reasons for finding Plaintiff less than credible regarding her physical impairments, but the ALJ's reasoning for discrediting Plaintiff's reporting of mental impairments is flawed. Substantial evidence in the record suggests that Plaintiff made significant efforts to follow through with the recommended treatment of her mental impairments. Plaintiff attended therapy and tried a variety of different medications to treat her depression, anxiety, sleeplessness, and other impairments. Moreover, although the ALJ cited to at least one instance where Plaintiff had enough money to purchase marijuana, the record overwhelmingly supports that Plaintiff has gone through lengthy periods when she was unable to afford treatment. (*See* Tr. at 306 ("[Plaintiff] unable to afford psychiatric treatment or medication."); Tr. at 380 (Plaintiff stopped taking medication "due to insurance coverage [expiring]."); Tr. at 385 (Plaintiff "has not had any way to pay for her dental needs.").) Failure to follow a course of treatment may be excused if the claimant's noncompliance is attributable to his or her mental illness, *Molina*, 674 F.3d at 1114, or if the claimant cannot afford the treatment, *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). The ALJ erred in discrediting Plaintiff's reporting of her mental impairments due to her failure to comply with treatment.

### d. Inconsistent reporting of polysubstance use

The ALJ found that Plaintiff's inconsistent reports about her drug and alcohol use undermined her credibility. (Tr. at 31-32.) The ALJ pointed to some instances in the record where Plaintiff reported drinking alcohol or using recreational drugs and other instances where she denied such consumption during the same time period. (Tr. at 31-32; Tr. at 307, 347.) The ALJ noted that this inconsistent information on a matter "integral to determining disability" suggested that Plaintiff was unreliable. (Tr. at 32.)

Although the ALJ is allowed wide latitude to assess a claimant's credibility, substantial evidence does not seem to support the ALJ's conclusion that Plaintiff was inconsistent regarding her drug and alcohol use. The record instead reveals that Plaintiff

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 16

used marijuana sparingly in her past and that she will occasionally drink a beer. There is no indication that Plaintiff used either marijuana or alcohol in excess during her period of alleged disability or that her alcohol and drug use contributed in any way to her impairments. The ALJ erred in discrediting Plaintiff's reporting of her mental impairments due to her limited, and apparently inconsequential, drug and alcohol use.

### e. Drug seeking behavior

The ALJ found Plaintiff less than credible in part because she found that Plaintiff exhibited drug seeking behavior. (Tr. at 31, 33.) Dr. Dove did note that "[Plaintiff] wants narcotics or pain pill . . . persists on wanting a pill." (Tr. at 408.) No other evidence in the record, however, suggests that Plaintiff is addicted to pain pills or exaggerates her symptoms to obtain pills. This single entry does not constitute substantial evidence that Plaintiff exhibited drug seeking behavior. This reason is not sufficient to undermine Plaintiff's credibility.

### f. Ceasing employment for reasons other than disability

The ALJ noted that Plaintiff seemed to stop working for reasons other than her allegedly disabling physical impairments. (Tr. at 28-29.) The ALJ pointed to instances where employers dismissed Plaintiff from jobs when she was a victim of domestic violence, was tardy and absent from work, was charged with a crime, and had conflicts with coworkers. (Tr. at 28-29; *see also* Tr. at 301.)

The ALJ reasonably concluded that these instances undermined Plaintiff's claim that her physical impairments prevent her from working. These instances, particularly the time when Plaintiff was fired due to conflicts with coworkers, however, are not contrary to Plaintiff's reporting of her mental impairments. Again, this reason is valid to the ALJ's determination of Plaintiff's reporting of her physical impairments, but not valid as to Plaintiff's reporting of mental impairments.

### g. Conclusion

The Court finds that the ALJ's credibility determination is based primarily on inconsistencies between her reported physical symptoms and the evidence suggesting she

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 17

is able to do more than she claims.  The Court concluded *supra* that the ALJ erred in not giving adequate weight to Dr. Billings' and Ms. Spitler's opinions regarding Plaintiff's borderline personality disorder and her ability to function socially.  The ALJ did not provide reasons why Plaintiff's mental impairments are inconsistent with her reporting. On remand, after reevaluating the evidence of Plaintiff's mental impairments, the ALJ may also need to reconsider Plaintiff's credibility.

**4.  Did the ALJ err in relying upon Dr. Toews' diagnosis of malingering in discrediting Plaintiff's symptom testimony?**

Plaintiff argues that the ALJ erred in determining that Plaintiff was malingering based on Dr. Toews' use of a symptom validity test.  Plaintiff, citing to government reports, argues that multiple sources of information are necessary to determine whether a claimant is malingering.  As noted *supra*, even though the ALJ noted Dr. Toews' diagnosis of malingering, the ALJ did not use this diagnosis to completely discredit Plaintiff. Rather, the ALJ provided several reasons for finding less than credible.  The ALJ did not rely solely on Dr. Toews' malingering diagnosis to find Plaintiff less than credible; therefore, the Court need not address Dr. Toews' malingering diagnosis.

**5.  Did the ALJ err in formulating Plaintiff's RFC and hypothetical questions to the VE by failing to account for Plaintiff's full range of functional limitations?**

A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs.").  In formulating an RFC, the ALJ weighs medical and other source opinion and also considers the claimant's credibility and ability to perform daily activities.  *See*, *e.g.*, *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

"Hypothetical questions posed to the [VE] must set out all the limitations and restrictions of the particular claimant."  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  The testimony of a VE "is valuable only to the extent that it is supported by

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 18

medical evidence." *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982).  The VE's opinion about a claimant's RFC has no evidentiary value if the assumptions in the hypothetical are not supported by the record.  *Embrey*, 849 F.2d at 422.  Nonetheless, an ALJ is only required to present the VE with those limitations the ALJ finds to be credible and supported by the evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001).

In this case, the ALJ found that Plaintiff had the RFC to perform light work subject to the following:

> [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently; sit about six hours and stand and/or walk about six hours in an eight-hour day with regular breaks.  She can frequently climb, stoop, kneel, balance, and crawl.  She can perform simple routine work with superficial contact with others, including coworkers, supervisors, and the general public.

(Tr. at 26.)  When the ALJ included these limitations in her hypothetical question to the VE, the VE opined that such an individual would be capable of working as a fruit sorter, production assembler, and motel cleaner.  (Tr. at 66.)

Plaintiff's counsel asked the VE whether a GAF score below 43 would preclude a person from working.  (Tr. at 69.)  The VE responded that such a low score would result in "an inability to maintain work." (Tr. at 70.)

As discussed *supra*, the Court concludes that the ALJ erred in discounting the opinions Dr. Billings and Ms. Spitler concerning Plaintiff's mental impairments. When these opinions concerning Plaintiff's borderline personality disorder and level of social functioning are given greater weight, it is reasonable to conclude that Plaintiff is not able to maintain even "superficial" social contacts in the workplace.  On remand, after further evaluation of the medical evidence and Plaintiff's credibility concerning her mental impairments, the ALJ may need to rephrase her hypothetical question to include all limitations supported by the record.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 19

**REMEDY**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAlliser v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, the record has not been thoroughly developed and there are outstanding issues that need to be resolved. Plaintiff argues that the appropriate remedy is remand for immediate calculation of benefits. Plaintiff posits that the VE concluded that an individual with a GAF score of 43 (approximately the GAF score assessed by Dr. Billings and Ms. Spitler) could not maintain employment. But a GAF score does not necessarily bind an ALJ's determination. *See Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 241 (6th Cir.2002) (While a Global Assessment Functioning score may be of "considerable help," it is not "essential" to determining an individual's residual functional capacity.); *see also McFarland v. Astrue*, 288 Fed. Appx. 357, 359 (9th Cir. 2008) ("The GAF score does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorders listings.") (citing 65 Fed. Reg. 50746, 50764-50765) (Aug. 21, 2000)). Given the need for the ALJ to reevaluate the medical evidence and the fact that GAF scores are not conclusive, it would not be appropriate to remand for immediate calculation of benefits on the grounds argued by Plaintiff.

1

**CONCLUSION**

2      Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's

3  decision is supported by substantial evidence and is not based on legal error.  Accordingly

4  **IT IS ORDERED** that:

5      1.   Plaintiff's Motion for Summary Judgment, filed December 1, 2014, **ECF No. 15**,

6  is **GRANTED**.

7      2.   Defendant's Motion for Summary Judgment, filed January 13, 2015, **ECF**

8  **No. 17**, is **DENIED**.

9      3.   Plaintiff's Motion to File Excess Pages, filed January 27, 2015, **ECF No. 20**, is

10  **GRANTED**.

11      4.   This matter is **REMANDED** to the Commissioner of Social Security for further

12  proceedings consistent with this decision and sentence four of 42 U.S.C. § 405(g).

13      The District Court Executive is directed to file this Order and provide copies to

14  counsel.  Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

15      **DATED** this 26th day of February, 2015.

16

17                              s/ Wm. Fremming Nielsen
                         _____
18                              WM. FREMMING NIELSEN
   02-19-15
19                       SENIOR UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 21